1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 L.J., a minor, by and through his Guardian ad Litem Karyn Jones, an individual, <div align="right">Plaintiff,</div> 13 v. 14 POWAY UNIFIED SCHOOL DISTRICT, a California public entity, AMY RICHARDSON, an individual, CITY OF SAN DIEGO, a public entity, OFFICER DYLAN MCGILL, an individual, OFFICER YOUNG JU, an individual, COUNTY OF SAN DIEGO, a public entity, COMMUNITY RESEARCH FOUNDATION, INC., a California not-for-profit corporation, and DOES 1-100, inclusive, <div align="right">Defendant.</div> | Case No.:  20cv1569-GPC(MDD) **ORDER:** **1) GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF SAN DIEGO AND OFFICER MCGILL'S MOTION TO DISMISS, [Dkt. No. 2];** **2) GRANTING DEFENDANTS PUSD AND RICHARDSON'S MOTION TO DISMISS, [Dkt. No. 9]; and** **3) GRANTING IN PART AND DENYING IN PART DEFENDANTS CRFI AND JU'S MOTION TO DISMISS, [Dkt. No. 12].** |

        Pending before the Court are fully briefed motions by Defendants City of San
Diego and Officer Dylan McGill for failure to state a claim pursuant to Federal Rule of
Civil Procedure ("Rule") 12(b)(6), (Dkt. Nos. 2, 16, 23); Defendants Poway Unified
School District and Amy Richardson for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6), (Dkt. Nos. 9, 18, 22); and Defendants Community Research Foundation, Inc. and Young Ju[1] for failure to state a claim under Rule 12(b)(6).  (Dkt. Nos. 12, 17, 19).  Based on the reasoning below, the Court GRANTS in part and DENIES in part the City of San Diego and Officer McGill's motion to dismiss; GRANTS PUSD and Richardson's motion to dismiss and GRANTS in part and DENIES in part CRFI and Ju's motion to dismiss.  Plaintiff is granted leave to file a first amended complaint.

## Background

On June 22, 2020, Plaintiff L.J., a minor by and through his Guardian ad Litem Karyn Jones ("Plaintiff" or "L.J.") filed a complaint against numerous defendants in San Diego Superior Court alleging eleven causes of action arising from his alleged unlawful and unconstitutional detention and alleged disability discrimination by the defendants during an incident at his school.  (Dkt. No. 1-3, Compl.)  Defendants are three separate entities and their employees and include Defendants Poway Unified School District ("PUSD") and Amy Richardson ("Richardson"), the Vice Principal of Design 39 Academy ("Design 39"); Defendants City of San Diego and Officer Dylan McGill ("Officer McGill"); and Defendants Community Research Foundation, Inc. ("CRFI") and CRFI Clinician Young Ju[2] ("Ju").[3]  (Dkt. No. 1-3, Compl.)  On August 13, 2020, the City of San Diego and Officer McGill filed a notice of removal and the case was removed to this Court.  (Dkt. No. 1, Not. of Removal.)

On May 7, 2019, L.J. was nine years old and a third grade student at Design 39 located in San Diego, CA.  (Dkt. No. 1-3, Compl. ¶ 16.)  Design 39 is a TK-8 school within the Poway Unified School District.  (*Id.*)  Plaintiff was documented as having

---

[1] Defendant Young Ju filed a notice of joinder in Defendant Community Research Foundation, Inc's motion to dismiss.  (Dkt. Nos. 15, 20)

[2] While Young Ju is referred to as "Officer Ju" in the complaint, it is not disputed that Ju is a PERT clinician employed by CRFI which Plaintiff does not dispute.

[3] County of San Diego was named as a Defendant but was dismissed by way of a joint motion to dismiss which the Court granted on October 8, 2020.  (Dkt. Nos. 11, 13.)

autism by Design 39 in February 2019 during the tri-annual testing period required by the Individualized Education Plan ("IEP") which Plaintiff had in place since he was in kindergarten.  (*Id.* ¶ 19.)  Due to his autism, he was easily over stimulated, sensitive to noise, and had difficulty processing the rapid input of stressful situations.  (*Id.* ¶ 18.)  As such, he frequently reacted with a "fight or flight" response that may be atypical or exaggerated for a situation.  (*Id.*)  He was also frequently teased and bullied by other children due to his symptoms which increased his difficulty in exhibiting appropriate social responses.  (*Id.*)

Prior to the incident, his teacher described L.J. as a friendly and polite student and spent the majority of his time alone or working with students in a small group.  (*Id.*) Moreover, L.J.'s interactions with his peers were kind and caring and he was liked by his classmates.  (*Id.*)  Prior to May 6, 2019, Plaintiff had been bullied by students on multiple occasions and despite Plaintiff's parents raising the issue with school officials on at least six occasions, the school took no action.  (*Id.* ¶ 22.)

On Monday, May 6, 2019, L.J. was participating in a group assignment with several students who had previously bullied him.  (*Id.* ¶ 23.)  He became overwhelmed and frustrated and stated he did not want to participate in the group.  (*Id.*)  Student A then teased and taunted Plaintiff stating "you're a quitter, [Plaintiff]".  (*Id.*)  When the group returned to the classroom, the students complained that Plaintiff had reacted inappropriately.  (*Id.*)  L.J. allegedly told Student A that he was going to bring a ninja stick, taser gun and his cub scout pocket knife to school and hurt him the next day.  (*Id.*) Vice Principal Amy Richardson was informed of the incident and left a voicemail message with Plaintiff's parents.  (*Id.*)  Mrs. Jones, L.J.'s mother, returned the call ten minutes later but was unable to reach Richardson so she then emailed the teacher, but did not receive a response.  (*Id.*)

On Tuesday, May 7, 2019, after interacting with Students A and B, Plaintiff repeatedly stated things like "this is not going to end well," "I hate you," and "I hate everyone in this class."  (*Id.* ¶ 24.)  When his teacher Ms. Becker approached, Plaintiffs

said, "no you're the worst of all.  You act nice but really, you're a criminal too.  You told the principal on me, and I'm going to tell the principal on you and this whole class." (*Id.*)  Ms. Becker then called the school's Welcome Center and then around 9:15 a.m., Richardson arrived, took Plaintiff to the Welcome Center/Office and searched Plaintiff's person and belongings.  (*Id.* ¶¶ 24, 25.)  No weapons or dangerous items were found. (*Id.*)  She then proceeded to detain and interrogate Plaintiff for at least four hours without contacting his parents and asked him questions about whether he wanted to hurt or kill himself or others.  (*Id.*)  She also required him to complete a psychological evaluation that asked him to choose between two options – that he wanted to hurt himself or kill himself.  (*Id.*)  She threatened him with law enforcement involvement and/or arrest if he did not sign the statement.  (*Id.*)  He was very confused as he thought he was taken to the office to address the teasing and bullying committed by Student A but she made no mention of the bullying.  (*Id.*)  He also informed Richardson that he had a "hate list" that included eight individuals who had repeatedly bullied him.  (*Id.*)

During the interrogation, law enforcement was contacted.  (*Id.* ¶ 26.)  San Diego Police Officer McGill and Psychiatric Emergency Response Team[4] ("PERT") "Officer" Young Ju arrived in a marked patrol car.  (*Id.*)  According to the complaint, Ju had no training concerning autism.  (*Id.* ¶ 29.)  While Officer McGill waited in the patrol car, Ju met with Plaintiff and Richardson and similarly berated Plaintiff with questions about whether he wanted to hurt himself or others, and treated Plaintiff as if nothing had prompted his statements.  (*Id.* ¶ 30.)  Ju repeatedly threatened L.J. with going to jail if he did not answer the questions or cooperate.  (*Id.*)  Though terrified, Plaintiff remained calm during the four-hour interrogation despite missing lunch and not having any water. (*Id.* ¶ 31.)  Richardson and Ju also refused Plaintiff's request to call his parents.  (*Id.*)  He

---

[4] "PERT began in San Diego County in 1996 as a partnership between law enforcement officers and mental health clinicians."  (Dkt. No. 1-3, Compl. ¶ 27 (citation omitted).)  PERT's mission is to "de-escalate a mental health emergency and, when possible, redirect the individual to mental health services instead of hospitalization or incarceration."  (*Id.* (citation omitted).)

was ultimately forced to sign a written statement about the incident that he did not write and could not read.  (*Id.*)  Ju decided to take Plaintiff to Rady Children's Hospital ("Rady's") for a psych-evaluation and handcuffed and walked him out to the patrol car. (*Id.*)  During the four-hour interrogation, Richardson and Ju did not contact Plaintiff's parents or allow him to consult with legal counsel.  (*Id*. ¶ 32.)

The school called Mrs. Jones at around 1:45 p.m. and told her that "the police are taking your son."  (*Id.* ¶ 33.)  She demanded more information but Richardson responded, "I'm sorry, the decision has been made and there is nothing I can do."  (*Id.* ¶ 33.) Richardson advised Mrs. Jones to not get involved but she demanded they wait until she arrived.  (*Id.* ¶ 33.)  She arrived at the school between 1:45 p.m. and 2 p.m. and met with Richardson and asked to see Plaintiff.  (*Id.* ¶ 34.)  Richardson did not tell her where Plaintiff was and instead asked her to sit in a room while Ju was brought in to provide a brief summary of what happened.  (*Id.*)  Ju, wearing a police uniform, did not explain who he was or his relationship to the police department and referred to Officer McGill as "his partner."  (*Id.*)  As Richardson and Ju explained what happened, Mrs. Jones explained that Plaintiff has autism to which Ju did not respond.  (*Id.*)  Instead, he said made the decision and there was nothing she could do.  (*Id.*)  When Mrs. Jones asked if Plaintiff could be placed in her care, Ju responded that he could either take Plaintiff to Rady's or arrest him for verbal threats.  (*Id.*)

Mrs. Jones then demanded to see L.J.  (*Id.* ¶ 35.)  When informed he was in the patrol car, she proceeded to the car and knocked on the window and asked to see her son. (*Id.*)  Officer McGill eventually agreed and when Mrs. Jones opened the door, she saw Plaintiff handcuffed in the back seat completely terrified and confused and stated, "Mom, why am I here?  I don't know what is going on?"  (*Id.*)  Plaintiff sat in the back seat of the patrol car while handcuffed for over an hour with no ventilation as the car sat in direct sunlight in front of the school.  (*Id.* ¶ 36.)  During this time, Ju said he could not leave until he called all the people on the "hate list."  (*Id.*)  Mrs. Jones then asked Ju and McGill whether she could transport him to Rady's but Ju responded, "no, this is our

policy" and she could not take him.  (*Id.*)  Mrs. Jones told them that she would follow them.  (*Id.*)

Around 3 p.m., they headed to Rady's.  (*Id.* ¶ 37.)  While still handcuffed, L.J. sat in the waiting room with Mrs. Jones, Officer McGill and Ju.  (*Id.* ¶ 39.)  After about 30 minutes, Mrs. Jones asked Ju if the handcuffs could be removed so L.J. could eat a snack, and Ju responded, "you'll have to ask my partner."  (*Id.*)  Officer McGill then said, "well I suppose so" and removed the handcuffs which left bright red marks and cuts on L.J.'s wrists.  (*Id.*)  While waiting, Ju filled out a report and asked Mrs. Jones some questions.  (*Id.* ¶ 40.)  When Mrs. Jones asked Ju if he had included the names of the bullying students, he responded, "what do you mean? I don't know anything about that."  (*Id.*)

After about 1.5 to 2 hours, Plaintiff was brought into an exam room.  (*Id.* ¶ 41.)  Ju gave his report and left.  (*Id.*)  The nurse checked Plaintiff's vitals, asked about medication and posed general mental health screening questions and she responded, "It's not a big deal, this happens a lot.  These guys bring kids in all the time who just say things."  (*Id.*)  They waited for another hour for the doctor to arrive, asking the same questions.  (*Id.*)  Finally, a social worker conducted a mental health screening and reviewed the PERT report.  (*Id.*)  She noted Plaintiff's conduct was typical for autistic individuals and made note of the bullying that prompted the incident.  (*Id*.)  They were released from the hospital at 9:00 p.m.  (*Id.*)

The next day, on May 8, 2019, at 3:44 p.m. Richardson left a voicemail with Mrs. Jones stating that Plaintiff had been suspended for five days pending administrative review.  (*Id.* ¶ 42.)  Around May 10, 2019, Design 39 sent a notice stating that Plaintiff was suspended from school for five days and a Manifestation Determination Review and an Administrative Review meeting was set on Tuesday, May 14, 2019.  (*Id.* ¶ 43.)  At the hearing, it was determined that Plaintiff's conduct was a result of his disability and that his suspension would not be in effect, although it was already served.  (*Id.*)  Mr. and Mrs. Jones informed Design 39 that Plaintiff could not return to school because he was severely traumatized by the incident and terrified to return to school.  (*Id.*)  School

administrator offered to meet with Plaintiff individually for the remainder of the school year which, according to Plaintiff, only highlighted the district's lack of understanding for kids with autism or the severe impact of the incident.  (*Id.*)

Due to the incident, Plaintiff became fearful of police officers, cried every time he tried to do school work, experienced nightmares, was afraid to go into a room with more than three people and was unable to engage in any social interactions due to severe social anxiety.  (*Id.* ¶ 44.)  Mr. and Mrs. Jones reported that Plaintiff was in shock for several weeks after the incident and only recently has been able to begin therapy but is still unable to discuss the incident.  (*Id.*)  Plaintiff was unable to return to school and began at a different school the following school year.  (*Id.*)

The complaint alleges the following eleven causes of action:

| | |
|---|---|
| First Cause of Action: | 42 U.S.C. § 1983 against Richardson, Ju and Officer McGill; |
| Second Cause of Action: | 42 U.S.C. § 1983 *Monell*[5] claim against PUSD, City of San Diego, and CRFI; |
| Third Cause of Action: | Title II of the American with Disabilities Act ("ADA") against PUSD, City of San Diego, and CRFI; |
| Fourth Cause of Action: | Section 504 of the Rehabilitation Act against PUSD, City of San Diego, and CRFI; |
| Fifth Cause of Action: | California Education Code section 220 against PUSD and Richardson |
| Sixth Cause of Action: | Unruh Civil Rights Act, California Civil Code section 51 *et seq*. against PUSD, City of San Diego, and CRFI; |
| Seventh Cause of Action: | California Government Code section 815.6 against PUSD, City of San Diego, and CRFI; |
| Eighth Cause of Action: | Negligence against all Defendants; |
| Ninth Cause of Action: | False Imprisonment/Arrest against all Defendants; |
| Tenth Cause of Action: | Battery against Ju, McGill, City of San Diego, and CRFI; |
| Eleventh Cause of Action: | Intentional Infliction of Emotional Distress against all Defendants |

---

[5] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).

(Dkt. No. 1-3, Compl.)  Defendants City of San Diego and Officer McGill move to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. No. 2.)  Defendants PUSD and Amy Richardson move to dismiss the complaint pursuant to Rule 12(b)(1) and alternatively Rule 12(b)(6).  (Dkt. No. 9.)  Defendants CRFI and Ju move to the dismiss the complaint under Rule 12(b)(6).  (Dkt. No. 12.) Plaintiff filed oppositions to these motions.  (Dkt. Nos. 16, 17, 18.)  Defendants replied. (Dkt. Nos. 19, 20, 22, 23.)

## Discussion

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Similar to a Rule 12(b)(6), on a facial attack on subject matter jurisdiction the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in favor of the plaintiff.  *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014).  However, on a factual attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment and need not presume the truthfulness of the allegations in the complaint.  *White*, 227 F.3d at 1242 (citations omitted).

### B.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**C.   Motion to Dismiss by City of San Diego and Officer McGill**

Defendants City of San Diego and Officer McGill move to dismiss portions of the complaint. First, they seek dismissal of the allegations of supervisory liability as to Officer McGill as there was no supervisor/supervisee relationship between him and Young Ju. Second, they argue the common law claims alleged against the City of San Diego are barred by California Government Code ("Government Code") section 815.

Finally, they argue the City of San Diego is immune from all claims for punitive damages under Government Code section 818.

Plaintiff responds that facts are sufficiently alleged to support supervisory liability against Officer McGill.  Second, Plaintiff argues that he does not claim the City of San Diego is liable under Government Code section 815 but the City is proximately liable for claims under Government Code section 815.2.  Third, Plaintiff does not oppose the dismissal of the punitive damages claims.  Because Plaintiff does not oppose the dismissal of the punitive damages claims, the Court GRANTS City of San Diego's motion to dismiss on this issue.

### 1.    Supervisor Liability

Defendants move to dismiss the allegation of supervisory liability as contained in paragraphs 85-89 in the complaint because Officer McGill was not the supervisor of Ju. (Dkt. No. 2-1 at 4-5.[6])  They explain that McGill is an officer with the San Diego Police Department while Ju is a mental health clinician affiliated with the PERT program and employed by another entity, Defendant CRFI.  Plaintiff opposes arguing that Defendants ignore the close collaborative nature of the PERT program and the San Diego Police Department.[7]

---

[6] Page numbers are based on the CM/ECF pagination.

[7] In support, Plaintiff filed a request for judicial notice of San Diego Police Department Procedure ("SDPDP") 6.20 addressing policies and procedures "for handling persons experiencing mental health emergencies" and SDPDP 6.28 which explains the policies and procedures for its "Psychiatric Emergency Response Team".  (Dkt. No. 16-1, P's RJN, Exs. 1, 2.)  Defendants oppose.  (Dkt. No. 23 at 2-3.)  First, they argue that SDPDP 6.28 is not applicable as it is dated June 6, 2019 and the incident took place prior to that date on May 7, 2019, (Dkt. No. 23 at 2), which Plaintiff concedes.  (Dkt. No. 16 at 8 n. 2.)  Second, Plaintiff uses the documents to infer the existence of a supervisory relationship which is not proper on a request for judicial notice.  (Dkt. No. 23 at 2-3.)  The Court agrees. The "court may judicially notice a fact that is not subject to reasonable dispute because it. . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1).  Because Defendants oppose and Plaintiff relies on these documents to resolve a factual issue of fact, it is not proper on a motion to dismiss.  Accordingly, the Court DENIES Plaintiff's request for judicial notice of SDPDP 6.20 and 6.28.  As such, the Court also DENIES Plaintiff's request for judicial notice of SDPDP 6.20 filed in opposition to CRFI's motion to dismiss, (Dkt. No. 17-1, P's

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his *subordinates*; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted) (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (supervisory officials "may not be held liable for the unconstitutional conduct of their *subordinates* under a theory of *respondeat superior*.") (emphasis added and italics in original); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his *subordinates* if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under section 1983.") (emphasis added).  To establish a prima facie case of supervisor liability, a plaintiff must show facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor,* 880 F.2d at 1045.

As caselaw describes, supervisory liability requires a supervisor/subordinate relationship.  The complaint summarily alleges that Officer McGill is liable as a supervisor of Ju.  (Dkt. No. 1-3, Compl. ¶¶ 85-89.)  But the complaint also claims that Mr. and Mrs. Jones were informed that police officers have "no duty to supervise, observe, or monitor PERT officers, but instead served solely as a means of transportation and safety- essentially, a policy of complete deference."  (*Id.* ¶ 29.)  Further, no other facts are alleged to support the claim that Officer McGill was a supervisor or acted in the

RJN, Ex. 1), and Defendant CRFI's request for judicial notice of SDPDP 6.28.  (Dkt. No. 12-1, D's RJN, Ex. 2.)

20cv1569-GPC(MDD)

role of a supervisor over Defendant Ju during the incident.  Next, Plaintiff has not

provided any legal authority that a police officer, employed by the City of San Diego,

may be a supervisor over a PERT clinician employed by another agency, CRFI.  Finally,

Plaintiff's argument that a close collaborative relationship supports a supervisory

relationship is not supported and does not render Officer McGill a supervisor over Ju.

Accordingly, the Court GRANTS Defendants' motion to dismiss the supervisory liability

allegations contained in paragraphs 85 - 89 of the complaint.

### 2.     California Tort Claim Act

Defendants next argue that the eighth through eleventh claims fail as a matter a law

against the City of San Diego as there is no common law governmental tort liability

under Government Code section 815.  Plaintiff responds that the complaint does not

allege direct tort liability against the City but alleges derivative liability for torts

committed by its employee, Officer McGill, under Government Code section 815.2(a).

"Under the [Tort Claims] Act [Cal. Gov. Code § 815], governmental tort liability

must be based on statute; all common law or judicially declared forms of tort liability,

except as may be required by [the] state or federal Constitution, were abolished."

*Michael J. v. Los Angeles Cnty. Dep't of Adoptions*, 201 Cal. App. 3d 859, 866 (1988).

Government Code section 815 provides,

> Except as otherwise provided by statute:
> (a) A public entity is not liable for an injury, whether such injury arises out
> of an act or omission of the public entity or a public employee or any other
> person.
> (b) The liability of a public entity established by this part (commencing with
> Section 814) is subject to any immunity of the public entity provided by
> statute, including this part, and is subject to any defenses that would be
> available to the public entity if it were a private person.

Cal. Gov't Code § 815.  This section bars claims against public entitles absent a statutory

provision.  *See id.*  However, California Government Code Section 815.2 explicitly

provides for vicarious liability and states that "[a] public entity is liable for injury

proximately caused by an act or omission of an employee of the public entity within the

scope of his employment." *Id.* "[U]nder California law municipalities enjoy no special immunity for negligence actions [and that a municipality] is liable for the negligence of [its employees] to the same extent that [the employees] would be liable individually." *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2016 WL 5944095, at *45–46 (N.D. Cal. Oct. 13, 2016).

Here, the complaint alleges common law tort liability of negligence, false imprisonment/arrest, battery and intentional infliction of emotional distress against the City of San Diego based on Officer McGill's acts as an employee of the City. (Dkt. No. 1-3, Compl. ¶¶ 244, 245, 257, 265, 273.) Therefore, Plaintiff has alleged claims that the City of San Diego is vicariously liable for the acts of Officer McGill as an employee of the City. *See* Cal Gov. Code § 815.2(a); *Talada v. City of Martinez, Cali*, No. C 08–02771 WHA, 2009 WL 382758 at *5-6 (N.D. Cal. Feb. 12, 2009) (denying the City of Martinez Police Department's motion to dismiss state claims of false imprisonment and negligence arising from false arrest performed by its police officers); *Save CCSF Coalition v. Lim,* No. 14–cv–05286–SI, 2015 WL 3409260, at *17 (N.D. Cal. May 27, 2015) ("A public entity, such as a municipality, can be held vicariously liable on state law claims for the actions of its employee pursuant to California Government Code § 815.2(a)."). Accordingly, the Court DENIES Defendants' motion to dismiss the eighth through eleventh causes of action for common law tort claims as to the City of San Diego. *See Nozzi v. Hous. Auth. of City of Los Angeles*, 425 Fed. App'x 539, 542 (9th Cir. 2011) (holding that public entities "may be held vicariously liable for the negligent acts of their individual employees").

In sum, the Court GRANTS Defendants' motion to dismiss the supervisory liability allegations and DENIES Defendants' motion to dismiss the eighth through eleventh causes of action. The Court also GRANTS Defendants' motion to dismiss punitive damages claim as unopposed.

/ / /

/ / /

**D.      Motion to Dismiss by PUSD and Richardson**

Defendants PUSD and Richardson move to dismiss portions of the complaint for lack of subject matter jurisdiction based on Eleventh Amendment immunity under Rule 12(b)(1),[8] and alternatively seek to dismiss the common law claims for failure to state a claim under Rule 12(b)(6).  (Dkt. No. 9.)  Specifically, PUSD and Richardson move to dismiss the state law claims under the sixth cause of action for violation of the Unruh Civil Rights Act and seventh cause of action for breach of mandatory duties as well as the common law claims alleged in the eighth cause of action for negligence, ninth cause of action for false imprisonment and eleventh cause of action for intentional infliction of emotional distress.[9]  (Dkt. No. 9-1 at 11-12.)

**1.      Eleventh Amendment Immunity**

The Eleventh Amendment bars suits seeking damages or injunctive relief against the state brought in federal court.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003); *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir.) (explaining agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief), *cert. denied,* 138 S. Ct. 459 (2017); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124–25 (1984); *Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394-95 (9th Cir. 1997).  The Eleventh Amendment also bars damages actions against state officials in their official capacity but not in their individual capacity.  *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). "The Eleventh Amendment's bar against suing an arm of the state in federal court applies equally to federal and state law claims."  *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1039 (E.D. Cal. 2009).

---

[8] As recognized by Defendants, a motion to dismiss based on Eleventh Amendment immunity may be analyzed under either Rule 12(b)(6) or Rule 12(b)(1).  *Sato v. Orange Cnty. Dept of Educ.*, 861 F.3d 923, 927 n. 2 (9th Cir. 2017).

[9] The Court relies on the notice of motion that seeks dismissal of the state law claims and not the federal claims notwithstanding that Defendants also argue for dismissal of "each cause of action asserted against it."  (Dkt. No. 9-1 at 11; Dkt. No. 22 at 5.)

School districts in California are agents of the state and immune to suit under the Eleventh Amendment. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) *cert. denied*, 507 U.S. 919 (1993); *Sato*, 861 F.3d at 934 (reaffirming Eleventh Amendment immunity to California public school districts after passage of AB 97 concerning state funding). Similarly, suits against school officials sued in their official capacity are barred under the Eleventh Amendment. *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009).

Defendants PUSD and Richardson argue that the sixth through ninth and eleventh claims are barred under the Eleventh Amendment. In response, Plaintiff does not dispute that the "the Eleventh Amendment renders Defendant PUSD immune from suit in federal court." (Dkt. No. 18 at 11.) Instead, Plaintiff asks the Court to remand the case to state court arguing that "where an entity or individual entitled to Eleventh Amendment Immunity does not join in or consent to removal and timely raises its immunity defense in federal court, the proper remedy is remand, rather than dismissal, of plaintiff's claims, particularly where remand is necessitated through no fault of plaintiff's and dismissal would result in prejudice to plaintiff." (*Id.* at 11-12.) PUSD and Richardson reply that remanding the claims against them while the case is being litigated in this court will result in piecemeal litigation and is not legally supported nor practical.

Plaintiff has not provided any legal authority and the Court agrees with Defendants that there is no procedural mechanism to remand certain defendants in a case to state court while adjudicating the remaining defendants in federal court based on the same underlying incident. Accordingly, the Court GRANTS PUSD's motion to dismiss the sixth through ninth and eleventh causes of action as barred by the Eleventh Amendment as unopposed.

Moreover, even if such a procedure were allowed, the Court notes that Plaintiff has waived any request to remand the case or part of the case to state court. The removal statute requires that all defendants who have been "properly . . . served in the action" must join in the notice of removal. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193

n. 1 (9th Cir. 1988); *see* 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been properly joined and served must join in or consent to the removal of the action.")  "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).  A plaintiff's failure to challenge a procedural defect in the removal before the 30 day deadline constitutes a waiver and the deadline is strictly enforced.  *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995) ("district court had no authority to remand the case to the state court on the basis of a defect in removal procedure raised for the first time more than 30 days after the filing of the notice of removal.")  In this case, at the time of removal, PUSD and Richardson had been served but did not consent to the removal.  (Dkt. No. 1 at 3.)  Because Plaintiff did not raise the issue of the procedural defect in a motion to remand within the 30 day period, he has waived his procedural objection to removal.

Richardson also moves to dismiss these state law claims against her based on Eleventh Amendment Immunity as the complaint alleges claims against her in her official capacity and such claims are barred.  (Dkt. No. 9-1 at 13-14.)  In response, Plaintiff argues that he is suing Richardson in her individual capacity and dismissal is not warranted.  (Dkt. No. 18 at 15-16.)

The Eleventh Amendment bars suit against a state official in his or her official capacity but does not bar suit in his or her individual capacity.  *Pena*, 976 F.2d at 473.  "In determining whether a plaintiff has sued officials in their personal capacity, courts first look to the allegations asserted in the complaint."  *Lil' Man in the Boat, Inc. v. City and Cnty. of San Francisco*, Case No. 17-cv-00904-JST, 2019 WL 8263438, at *3 (N.D. Cal. Nov. 6, 2019) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (noting that courts should consider additional factors in cases where the complaint does not clearly specify whether officials are sued personally)).  Here, the complaint clearly alleges that Richardson is the Vice Principal of Design 39 and an employee of PUSD and

20cv1569-GPC(MDD)

"acting or purporting to act in her official capacity as such."  (Dkt. No. 1-3, Compl. ¶ 4.) Therefore, because the complaint seeks to sue Richardson in her official capacity, Plaintiff's claims are barred.[10]

In sum, the Court GRANTS PUSD and Richardson's motion to dismiss the sixth, seventh, eighth, ninth and eleventh causes of action as unopposed and barred by the Eleventh Amendment.[11]

**E.   CRFI and Ju's Motion to Dismiss**

Defendants CRFI and Ju, by way of joinder, filed a motion to dismiss all causes of action against them based on the immunity provision provided under the Lanterman-Petris-Short Act ("LPS Act"), California Welfare & Institutions Code section 5150 *et seq.* ("section 5150").  (Dkt. No. 12-1 at 8-11.)  Plaintiff disputes that section 5150 applies to minors and instead section 5585.20 of the Children's Civil Commitment and Mental Health Treatment Act of 1988 ("CCC Act") applies.  *See* Cal. Welf. & Inst. Code § 5585.20.  In reply, Defendants do not dispute that section 5585.50 applies but contend that the standard for a 72-hour hold under section 5585.50 is similar to section 5150 and the immunity provided under the LPS also applies to the CCC Act.

The Court agrees with Plaintiff that the CCC Act applies to the facts in this case because Plaintiff is a minor.  The legislative intent of the CCA Act is "(a) To provide prompt evaluation and treatment of minors with mental health disorders, with particular priority given to seriously emotionally disturbed children and adolescents."  Cal. Welf. & Inst. Code § 5585.10.

_____

[10] Plaintiff argues that if the complaint is silent or ambiguous as to what capacity the official actor is being sued, the court looks beyond the caption to the basis of the claims asserted and relief sought and conducts a detailed analysis as to whether the allegations in the complaint alleges claims against Richardson in her personal capacity.  (Dkt. No. 18 at 15-21.)  However, in this case, the complaint is not silent and explicitly states that Richardson is being sued in her official capacity; therefore, the Court need not analyze the allegations in the complaint to determine if Richardson is sued in her personal or official capacity.

[11] Because the Court grants dismissal of PUSD and Richardson, the Court need not address whether punitive damages are sufficiently alleged against Richardson.

Section 5585.50 provides,

(a) When any minor, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled and authorization for voluntary treatment is not available, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the minor into custody and place him or her in a facility designated by the county and approved by the State Department of Health Care Services as a facility for 72-hour treatment and evaluation of minors. The facility shall make every effort to notify the minor's parent or legal guardian as soon as possible after the minor is detained.

(b) The facility shall require an application in writing stating the circumstances under which the minor's condition was called to the attention of the officer, member of the attending staff, or professional person, and stating that the officer, member of the attending staff, or professional person has probable cause to believe that the minor is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled and authorization for voluntary treatment is not available. If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, the person shall be liable in a civil action for intentionally giving a statement which he or she knows to be false.

Cal. Welf. & Inst. Code § 5585.50.  Section 5585.50 of the CCC Act applies solely to the 72-hour hold; otherwise, the LPS Act applies.  *Id.* § 5585.20.

The LPS Act provides immunity to an individual authorized to detain a person pursuant to section 5150 and that individual, "shall not be held either criminally or civilly liable for exercising this authority in accordance with the law."  Cal. Welf. & Inst. Code § 5278.  "Section 5278 clearly grants immunity to those individuals authorized to detain a person for a 72-hour hold."  *Jacobs v. Grossmont Hosp.*, 108 Cal. App. 4th 69, 74 (2003). "[S]ection 5278 means precisely what it says it means, and that civil liability, whether for battery, [or] for false imprisonment . . . is precluded insofar as the detention is 'in accordance with the law.'"  *Heater v. Southwood Psychiatric Ctr.*, 42 Cal. App. 4th 1068, 1083 (1996).

Here, Plaintiff argues that section 5278 immunity does not apply to the CCC Act because it cannot be read to extend to detentions not specified under that section. *See* Cal. Welf. & Inst. Code § 5278 ("Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) or Article 2 (commencing with Section 5200), or to certify a person for intensive treatment pursuant to Article 4 (commencing with Section 5250) or Article 4.5 (commencing with Section 5260) or Article 4.7 (commencing with Section 5270.10) or to file a petition for post-certification treatment for a person pursuant to Article 6 (commencing with Section 5300) shall not be held either criminally or civilly liable for exercising this authority in accordance with the law.").

Case law on section 5585.50 is scarce and limited and only one case, an unpublished Ninth Circuit case, *Pasion v. San Diego Unified Sch. Dist.*, No. 94-56255, 1996 WL 244674 at *6 (9th Cir. May 10, 1996), addressed the applicability of the LPS Act immunity to the CCA Act. In *Pasion*, the Ninth Circuit indicated that section 5278 immunity applied to a section 5585.50 detention but did not need to address the merits because the court already determined that the detention was done "in accordance with the law." *Id.*

In this case, the Court relies on *Pasion* for guidance and concludes that the section 5278 immunity applies to a minor's detention under 5585.50. The Court further notes that the CCC Act explicitly states that section 5585.50 applies solely to the initial 72-hour hold and to the extent there is no conflict, the provisions of LPS Act applies. Cal. Welf. & Ins. Code § 5585.20.[12] The immunity provision does not conflict with any provisions

---

[12] "This part shall apply only to the initial 72 hours of mental health evaluation and treatment provided to a minor. Notwithstanding the provisions of the Lanterman-Petris-Short Act . .., unless the context otherwise requires, the definitions and procedures contained in this part shall, for the initial 72 hours of evaluation and treatment, govern the construction of state law governing the civil commitment of minors for involuntary treatment. To the extent that this part conflicts with any other provisions of law, it is the intent of the Legislature that this part shall apply. Evaluation and treatment of a minor beyond the initial 72 hours shall be pursuant to the Lanterman-Petris-Short Act . . . ." Cal. Welf. & Ins. Code § 5585.20

of the CCC Act.  Therefore, the Court agrees with Defendants that the immunity provision of the LPS Act, section 5278, applies to the CCC Act.

Plaintiff, alternatively, argues that even if section 5278 immunity applied, the detention was not done "in accordance with the law"; therefore, Defendants are not immune.  Defendants disagree arguing the pleaded facts show a properly performed assessment where Ju performed his duties based on the information relayed by Design 39 staff and made the determination that Plaintiff was a threat.

First, Plaintiff contends that Ju was not "authorized" to conduct the detention. Section 5585.50(a) limits the detention of minors by peace officers, attending staff at county designated evaluation facilities and other county designated professional persons. Cal. Welf. & Ins. Code § 5585.50(a).  The complaint alleges that Ju is a PERT clinician and not a peace officer or individual designated or authorized by the county under section 5585.50.  Therefore, Ju had no authority to detain Plaintiff under section 5585.50 and thus, he is not immune section 5278.  Although Officer McGill was an authorized peace officer, he did not participate in the initial "examination."  Therefore, the complaint does not allege that Ju was authorized to carry out the detention under section 5585.20.

Second, Plaintiff argues there was no probable cause to detain him.  Section 5585.50 requires that there be probable cause to take a minor into custody and placed in a county designated facility.  Cal. Welf. & Ins. Code § 5585.50.  The standard of probable cause for a section 5150 detention[13] is similar probable cause for a warrantless arrest under the California Penal Code.  *People v. Triplett,* 144 Cal. App. 3d 283, 287 (1983). "To constitute probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace officer (or other authorized person) that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely

_____

[13] Because there is a scarcity of caselaw addressing section 5585.50 and the language of section 5585.50 is similar to section 5150, the Court looks to the probable cause standard under a section 5150 hold.

disabled.  In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." *Id.* at 287-88.

The complaint alleges that Plaintiff was brought to the Welcome Center/Office based on a verbal altercation and not a physical or violent one.  (Dkt. No. 1-3, Compl. ¶¶ 23-25, 34.)  Plaintiff had no weapons in his possession which was confirmed by Richardson.  (*Id.*)  During the interrogation and detention, though terrified and confused, he remained calm despite missing lunch, not having any water and despite Richardson and Ju's refusal to contact his parents.  (*Id.* ¶ 31.)  These alleged facts demonstrate that that a person of ordinary care and prudence would not believe that L.J. was mentally disordered, a danger to himself, or others, or was gravely disabled.  *See Triplett*, 144 Cal. App. 3d at 287.

Finally, in contravention to section 5585.50, Ju and Richardson did not attempt to contact Plaintiff's parents "as soon as possible" after L.J's detention.  (Dkt. No. 1-3, Compl. ¶¶ 32-33.)  According to Plaintiff, this demonstrates that Ju ignored the availability of voluntary treatment that was required under section 5585.50.  Therefore, the complaint alleges that the detention was not conducted in accordance with section 5585.50.

Because the complaint alleges that the detention was not conducted in compliance with section 5585.50 or "in accordance with the law," section 5278 immunity does not apply at this stage to bar Plaintiff's claims.  Therefore, the Court DENIES Defendants' motion to dismiss based on the section 5278 immunity.

Next, Defendants alternatively move to dismiss each cause of action alleged against them for failure to state a claim.  In response, Plaintiff agrees to dismiss the seventh cause of action for breach of mandatory duties under Government Code section 815.6 and eighth cause of action for negligence under California Government Code section 815.2, 815.6 and 820 against CRFI with leave to amend to allege general

negligence.[14]  (Dkt. No. 17 at 10.)  Plaintiff opposes Defendants' remaining arguments on each cause of action.

### 1.    Second Cause of Action - *Monell* liability as to CRFI

Defendants argue that CRFI is not liable under *Monell* because while Ju was acting under color of state law, no constitutional violation occurred because Ju conducted a proper 5150[15] assessment.[16]  (Dkt. No. 12-2 at 12.)  Plaintiff contends that CRFI violated his constitutional rights.

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983.  *Monell v. New York City Dep't of Social Servs*., 436 U.S. 658 (1978).  While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs.  *Monell,* 436 U.S. at 691-93.  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Id.* at 694.  A plaintiff must establish that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered."  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (citing *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)).  To establish *Monell* liability, Plaintiff must show that "(1) [Ju] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [CRFI]."  *Tsao v.*

---

[14] Defendants solely move to dismiss the eighth cause of action against CRFI and not against Ju.  (Dkt. No. 12-1 at 15.)

[15] In reply, Defendants do not dispute that section 5585.50 applies to minors instead of section 5150.

[16] While Defendants assert that CFRI is a private entity, not a public one, it appears to concede that a *Monell* claim may be extended to a private entity under certain circumstances and does not move to dismiss based on the fact it is a public entity.  (Dkt. No. 12-1 at 12.)

*Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1024 (9th Cir. 2008)).

Defendants do not dispute that Ju was acting under color of state law but summarily argue that there was no violation of Plaintiff's constitutional rights because Ju executed a proper section 5150 assessment.  As discussed above, the Court concluded that Plaintiff sufficiently alleged facts demonstrating that Ju did not properly execute a 5158.50 detention.  As such, Defendants' summary argument is without merit,[17] and the Court DENIES Defendants' motion to dismiss the § 1983 *Monell* claim against CRFI.

## 2.    Third Cause of Action – Title II of the ADA as to CRFI

Defendants move to dismiss the Title II of the ADA claim solely arguing that CRFI is not a public entity.  (Dkt. No. 12-1 at 12-13.)  In opposition, Plaintiff posits that Title II of the ADA should apply to CRFI as an instrumentality of the State.  (Dkt. No. 17 at 30.)

Title II of the ADA states "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).  To prevail under Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, the "plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability."  *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014).  In a disability action seeking monetary relief, a plaintiff must additionally

---

[17] While Plaintiff provides a detailed legal analysis as to the *Monell* claims, (Dkt. No. 17 at 18-30), Defendants did not move to dismiss on each separate ground of constitutional violations under *Monell* but only provided a summary argument that the claim should be dismissed because Ju conducted a proper assessment.  Furthermore, Defendants failed to address Plaintiff's arguments in their reply.  Thus, the Court declines to address each separate ground of constitutional violations raised in Plaintiff's opposition.

prove intentional discrimination as defined by the "deliberate indifference" standard. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).   Title II of the ADA defines public entity as "(A) any State or local government" and (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]"  42 U.S.C. § 12131.

The Ninth Circuit has not addressed the issue of whether Title II applies to private companies that contract with the State or local government.  In *Wilkins-Jones*, the court held that Title II of the ADA is not applicable to government contractors.  *Wilkins-Jones v.v. Cnty. of Alameda*, 859 F. Supp. 2d 1039, 1045 (N.D. Cal. 2012).  The court addressed and conducted a detailed analysis on the issue of whether a private business contracting with the County to provide medical services to inmates, can be considered an "instrumentality" of the state.  *Id.*  While acknowledging the split among courts as to "whether private companies can be held liable under Title II when they perform contracted services for the government", the majority of the courts, including circuit courts who have addressed this issue have held that Title II does not apply to government contractors.  *Id.* at 1045-46.

In opposition, Plaintiff asks the Court to consider the unique nature of PERT services and the dissent in the Eleventh Circuit's decision in *Edison v. Douberly*, 604 F.3d 1307, 1308, 1311 (11th Cir. 2010) (R. Barkett dissenting).  He argues that PERT performs essential government functions that only the government is allowed to perform such as involuntary detentions and should be considered an instrumentality of the state for purposes of Title II of the ADA.

In *Edison,* the Eleventh Circuit held that a private prison management corporation that contracted to provide prison management services to the state of Florida was not a "public entity" under Title II of the ADA.  *Id.* at 1310.  In dissent, Judge Barkett distinguished between contracting with the government and taking on government functions.  *Id.* at 1311.  She explained that where a private company contracts to provide essential government functions, functions which only governments are allowed to

perform, that company becomes an instrumentality of the state for liability purposes under the ADA. *Id.* In *Wilkes-Jones*, the district court considered the reasoning in Judge Barkett's dissent persuasive but concluded that it would defer to the currently prevailing view in the circuit courts that government contractors are not liable under Title II. *Wilkes-Jones*, 859 F. Supp. 2d at 1047.

This case involves a non-profit private corporation that contracts with the County of San Diego for PERT services and not to manage a prison. In contrast to *Edison* where the private corporation contracted with the state to operate a state prison, according to the contract between CRFI and the County of San Diego, PERT services involve more than just involuntary confinements and include functions such as consulting, training and developing programs that private companies can also provide separate from the state. (Dkt. No. 12-3, RJN, Ex. 1 at 20-28.[18]) Therefore, the Court declines the invitation to rely on the dissent in *Edison* to conclude that CRFI is an instrumentality of the state. Accordingly, given the current state of the law, the Court concludes that CRFI is not a public entity as defined under Title II of the ADA and the Court GRANTS the dismissal of the third cause of action.

/ / /

/ / /

---

[18] Defendant CRFI requests judicial notice of San Diego County Contract Number 544550 between the County and PERT, Inc. (the predecessor to CRFI), and the Agreement of Merger evidencing CRFI as the successor surviving corporation to PERT, Inc. as they are documents of public record. (Dkt. No. 12-2.) Pursuant to Federal Rules of Evidence 201, a court may take judicial notice of a fact not reasonably subject to dispute because it "is generally known within the trial court's jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiff does not oppose the request. Accordingly, because these documents are matters of public record and available on the relevant government websites, the Court GRANTS CRFI's request for judicial notice of Exhibit 1 and 3 of its RJN. *See Hall v. Washington Mutual Bank*, Case No. CV 10–01606 DMG (VBKx), 2010 WL 11549664, at *1 n. 2 (C.D. Cal. July 7, 2010) (granting request for judicial notice of contract with the FDIC, a federal agency, where contracts were available on the government websites and making them a matter of public record).

3.      **Fourth Cause of Action – Section 504 of the Rehabilitation Act as to CRFI**

Defendants next maintain that the Rehabilitation Act should be dismissed because it only applies to public entities.  (Dkt. No. 12-1 at 12-13.)  Plaintiff disagrees arguing that the Rehabilitation Act applies to both public and private entities that receive financial assistance from the federal government.  (Dkt. No. 17 at 30.)

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The Rehabilitation Act is broader in scope than the ADA.  *Fleming v. Yuma Regional Med. Ct*r., 587 F.3d 938, 941(9th Cir. 2009).  "Title II applies to public entities whereas Section 504 applies to recipient of federal funds."  *Wilkins-Jones*, 859 F. Supp. 2d at 1044.  The Rehabilitation Act broadly defines "program or activity" to include *inter alia* "all of the operations of—. . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship" if the entity as a whole receives federal assistance or if the entity "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation," and various other services. 29 U.S.C. § 794(b)(3)(A).

The complaint alleges that CRFI receives funds from the federal government. (Dkt. No. 1-3, Compl. ¶¶ 7, 167.)  Moreover, in reply, CRFI does not challenge Plaintiff's argument that the Rehabilitation Act applies.  Accordingly, the Court DENIES Defendants' motion to dismiss the fourth cause of action for violations of Section 504 of the Rehabilitation Act.[19]

_____

[19] In their reply, Defendants CRFI and Ju, for the first time, argue that the ADA and Rehabilitation Act claims must be dismissed because the complaint alleges that Ju knew of L.J.'s autism diagnosis after the assessment had been concluded; therefore, Ju could not have discriminated L.J. based on his disability. (Dkt. No. 19 at 8.)  The Court declines to consider this new argument raised for the first time in the

### 4.      Sixth Cause of Action – Unruh Civil Rights Act, California Civil Code section 51

Defendants aver that the complaint fails to allege that CRFI's conduct was "motivated" by L.J.'s autism because the complaint alleges that Ju did not know about L.J.'s autism diagnosis until his mother appeared at the school and Ju had already made his determination to send him to Rady's.  (Dkt. No. 12-1 at 14.)  In response, Plaintiff claims that the substantial motivating reason for Ju's conduct was his "reaction and perception that minors with autism do not suffer harm from the wrongful conduct alleged [ ] and/or that Plaintiff is not disabled."  (Dkt. No. 17 at 32-33.)

California Civil Code section 51, known as the Unruh Civil Rights Act, provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51.  To make out a prima facie case, the plaintiff must prove that (1) the defendant "discriminated or made a distinction that denied full and equal accommodations" as proscribed by the Act; (2) the defendant's "motivating" or "substantial motivating reason" for its conduct was "its perception" that the plaintiff possessed one or more of the characteristics protected by the Act; (3) the plaintiff was harmed; and (4) the defendant's "conduct was a substantial factor in causing [the plaintiff's] harm."  CACI No. 3060; Cheng et al., *Cal. Fair Housing and Public*

---

reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *In re China Intelligent Lighting & Elecs,, Inc. Sec. Litig.,* No. CV 11-2768 PSG SSX, 2012 WL 3834815, at *4 (C.D. Cal. Sept. 5, 2012) ("The Court will not address new arguments raised for the first time in a reply brief."); *United States ex rel. Giles v. Sardie,* 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

*Accommodations*, The Rutter Group 2015, § 12:3 [in absence of published cases setting forth these elements, looking to CACI Instruction for articulation of elements].)

Section 51(f) provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section." Cal. Civ. Code § 51.  As such, an Unruh Act claim is derivative of an ADA disability discrimination claim.  *Cohen v. City of Culver City*, 754 F.3d 690, 701 (9th Cir. 2014).  To demonstrate a violation of Title II of the ADA, a plaintiff "must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah Cnty*., 870 F.3d 939, 949 (9th Cir. 2017).  "A public entity may be liable for damages under Title II of the ADA or § 504 of the Rehabilitation Act if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Id.* at 951 (citation omitted).

Defendants argue that because Ju did not learn that L.J. was autistic until Mrs. Jones arrived at the school and his evaluation had been completed, Ju could not have discriminated L.J. based on his disability.  While that assertion is true, (Dkt. No. 1-3, Compl. ¶ 34), once Ju learned that L.J. was autistic, the complaint also claims that Ju should have been knowledgeable and aware of the symptoms associated with autism and should have accommodated L.J. while Ju continued his interaction with him.  (*See id.* ¶¶ 236, 247.)  Instead, when Mrs. Jones told Ju that L.J. had autism, he did not respond but stated that his decision had been made and there was nothing she could do about it.  (*Id.* ¶ 34.)  Mrs. Jones then asked whether she could take custody of L.J. and whether she could transport him to Rady's but Ju responded in the negative.  (*Id.* ¶¶ 34, 36.)  Then Ju proceeded to provide the *Tarasoff* notice to the students on the "hate list" and transported L.J. to Rady's.  (*Id.* ¶¶ 36-38.)

Therefore, Plaintiff has alleged that the substantial motivating reason for Ju's alleged discriminatory conduct by failing to accommodate was due to Plaintiff's disability.  Thus, the Court DENIES Defendants' motion to dismiss the Unruh Civil Rights Act.

**5.  Ninth Cause of Action – False Imprisonment/False Arrest as to CRFI and Ju**

Defendants move to dismiss the false arrest/false imprisonment claim arguing that Ju performed a proper section 5150 assessment, he provided the required and proper *Tarasoff*[20] notification to parents of the children identified on the "hate list" and properly aided Officer McGill in transporting L.J. to Rady's for a formal evaluation.  (Dkt. No. 12-1 at 15-16.)  Plaintiff disagrees arguing that false imprisonment has been properly alleged.  (Dkt. No. 17 at 33.)

The "elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however short." *Fermino v. Fedco, Inc*., 7 Cal. 4th 701, 715 (1994) (merchant's arrest). "Restraint may be effectuated by means of physical force, threat of force or of arrest, confinement by physical barriers or by means of any other form of unreasonable duress." *Id.* (internal citations omitted).  False imprisonment under California law is the "unlawful violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 757 (1997).  False arrest is not a different tort; it is merely "one way of committing a false imprisonment." *Collins v. City & Cnty. of San Francisco*, 50 Cal. App. 3d 671, 673 (1975).

Here, the complaint alleges that L.J. did not consent to the interrogation and was not allowed to freely leave.  (Dkt. No. 1-3, Compl. ¶ 31.)  He was interrogated and confined for four hours where he was interrogated and threatened with arrest.  (*Id*. ¶ 32.)

_____

[20] In *Tarasoff,* the California Supreme Court required that warnings be given directly to an identifiable potential victim of violence.  *Tarasoff v. Regents of the Univ. of Cal*., 17 Cal. 3d 425 (1976).

Eventually, he was placed in handcuffs and placed in a police vehicle without L.J.'s consent or probable cause.  (*Id.*)  These allegations support a claim for false imprisonment.  The Court DENIES Defendants' motion to dismiss the false imprisonment/false arrest cause of action.

### 6.   Tenth Cause of Action – Battery as to CRFI and Ju

Defendants move to dismiss the battery claim arguing that Ju performed a proper assessment and the necessary touching in transporting L.J. to Rady's for a formal evaluation.  (Dkt. No. 12-1 at 17.)  Plaintiff argues that he was tightly handcuffed without his consent for about three hours which caused bruises and cuts on his wrists causing significant physical pain and emotional trauma.  (Dkt. No. 17 at 34.)

Civil battery requires the following elements: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff."  *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 536-27 (2009); *Rains v. Superior Ct.*, 150 Cal. App. 3d 933, 938 (1984) ("A battery is a violation of an individual's interest in freedom from intentional, unlawful, harmful or offensive unconsented contacts with his or her person.").

The complaint alleges a claim for battery by asserting that Plaintiff was handcuffed for a period of three hours without his consent which caused physical and emotional harm.  (Dkt. No. 1-3, Compl. ¶¶ 31, 36, 38-39.)  Accordingly, the Court DENIES Defendants' motion to dismiss the battery cause of action.

### 7.   Eleventh Cause of Action – Intentional Infliction of Emotional Distress as to CRFI and Ju

Defendants similarly argue that the intentional infliction of emotional distress claim should be dismissed because Ju conducted a proper assessment and there was nothing extreme or outrageous in Ju's conduct.  (Dkt. No. 12-1 at 18.)  In response, L.J. contends that the detention, interrogation, seizure and/or arrest was extreme and outrageous.  (Dkt.  No. 17 at 34.)

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct.  *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998).  The California Supreme Court has set a "high bar" to demonstrate severe emotional distress.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009).  "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"  *Id.* (citation omitted).

Here, the complaint sufficiently alleges extreme and outrageous conduct by Defendants of further detaining, interrogating and handcuffing a nine-year old autistic boy who exhibited no signs of violence or emotional distress during the interrogation. *See e.g. Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.,* 39 Cal. App. 5th 995, 1007 (2019) (extreme and outrageous conduct where director of non-profit corporation, also victim's grandmother, flew into a tirade, yelling at a 13-year-old rape victim that she is stupid and it was her fault).  Accordingly, the Court DENIES the motion to dismiss the intentional infliction of emotional distress cause of action.

In sum, the Court GRANTS Defendants CRFI and Ju's motion to dismiss the Title II of the ADA cause of action and DENIES the motion to dismiss as to the immunity under the LPS Act, claims under *Monell,* Section 504 of the Rehabilitation Act, Unruh Civil Rights Act, and the state law claims for false imprisonment/false arrest, battery and intentional infliction of emotional distress.  The Court also GRANTS dismissal of the seventh cause of action for breach of mandatory duties under Government Code section 815.6 and eighth cause of action for negligence under California Government Code section 815.2, 815.6 and 820 against CRFI as unopposed.

/ / /

/ / /

**F.     Leave to Amend**

In the opposition to all Defendants' motions to dismiss, Plaintiff seeks leave to file an amended complaint in the event the Court grants dismissal of any claims.  Because leave to amend would not be futile, the Court GRANTS Plaintiff's request for leave to file an amended complaint.  *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

<div align="center">

**Conclusion**

</div>

As described above, the Court GRANTS in part and DENIES in part the City of San Diego and Officer McGill's motion to dismiss; GRANTS PUSD and Richardson's motion to dismiss; and GRANTS in part and DENIES in part CRFI and Ju's motion to dismiss.  Plaintiff is granted leave to amend to file an amended complaint within 20 days of the Court's order.  The hearing set on December 4, 2020 shall be **vacated.**

IT IS SO ORDERED.

Dated:  December 2, 2020

Hon. Gonzalo P. Curiel
United States District Judge

20cv1569-GPC(MDD)